**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

MARLON ROBINSON,

        Plaintiff,

vs.

DOMINO'S PIZZA, INC.,

        Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

"Here's your shit, Nigger." No, this is not a quote from a Civil War–era movie or a 1950's inspired story. This is a quote—captured on video no less—from a Domino's Pizza manager in 2018, as he threw Mr. Robinson's pizza across the floor. While Mr. Robinson just wanted a side of chicken wings—what he got was a side of old-fashioned racism and hatred.

And so, Plaintiff, MARLON ROBINSON ("Mr. Robinson") sues Defendant, DOMINO'S PIZZA, INC. ("Domino's"), and as grounds thereof alleges as follows:

**BACKGROUND**

Mr. Robinson is a hard-working and dedicated husband and father of five, with two jobs, a volunteer football coach, a mentor at the local high school, and working towards receiving his master's degree in Accounting. Due to his very hectic schedule, Mr. Robinson regularly orders food from Domino's multiple times per week. What he certainly did not expect when he ordered three medium pizzas with pineapples and peppers with a side of chicken wings was to be degradingly insulted and called a "Nigger" as a Domino's manager threw his pizza on the floor for him to fetch like a slave.

1 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

## JURISDICTION

1. This is an action against Domino's that arises under the Constitution and laws of the United States, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, as amended, ("Section 1981").

2. Jurisdiction of this Court arises under 28 U.S.C. 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

3. Venue in this District is proper under 28 U.S.C. 1391 because a substantial part of the events and omissions complained of took place in this District.

## PARTIES

4. At all times relevant to this Complaint, Mr. Robinson was and is a U.S. Citizen, over the age of 18, and a person with standing to bring a claim under Section 1981.

5. Mr. Robinson is 36 years old and is of African-American descent.

6. Domino's is an American pizza restaurant chain founded in 1960. The corporation is headquartered at the Domino's Farms Office Park in Ann Arbor, Michigan.

7. As of February 2018, Domino's has approximately 15,000 stores, with 5,649 in the United States, 1,127 in India, and 1,094 in the UK making the chain the largest pizza seller worldwide in terms of sales. Mr. Robinson was simply hoping to be treated the same way as millions of other Domino's customers were supposed to be treated world-wide.

## GENERAL ALLEGATIONS

8. Mr. Robinson provides in this General Allegations section the general substance of certain factual allegations. Mr. Robinson does not intend that this section provide in exact detail, or necessarily in chronological order, any or all allegations. Rather, Mr. Robinson intends that this section merely provide Domino's fair notice of the general nature and substance of his allegations.

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

9. On April 5, 2018, at 5:15 p.m., after picking up his daughters from school, ages 9 and 12, Mr. Robinson placed an online delivery order using Domino's Online Services which boasts being fast, easy, & convenient.

10. Domino's Pizza prides itself so much in their delivery services that until recently, Domino's guaranteed delivery within 30 minutes or the order was free.

11. The online delivery services offered by Domino's gives customers an option to learn of the estimated time of arrival, of their order, when the order is being placed. It is up to the customer to decide if the estimated time of arrival is acceptable before the order is finalized.

12. When an order is placed using Domino's smartphone application, Domino's routes the order to the proper store based upon the location of the delivery address. In other words, the customer has no control over which location actually completes the order.

13. When Mr. Robinson had not received his food after waiting an hour, he checked the order's status online and realized his pizza order was sent to the wrong store at 17728 Pines Blvd, Pembroke Pines, FL 33029, ("West Pines Store").

14. With two hungry daughters eagerly awaiting their dinner, upon realizing Domino's error, Mr. Robinson called the West Pines Store at around 6:15 p.m., and spoke to a Manager who apologetically explained that his order had gone to the wrong store. Since this was not Mr. Robinson's fault, the manager offered to call the correct store located at 1401 N Palm Ave, Pembroke Pines, FL 33026 ("Palm Ave Store") and transferred the order.

15. Furthermore, the Manager offered Mr. Robinson 50% off his current order plus an additional free pizza on his next order due to the inconvenience caused by Domino's.

16. After another 30 minutes passed—around 6:45 p.m.—Mr. Robinson called the Palm Ave Store to follow up with the order. He spoke with the Manager named Brandon.

3 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

17. Brandon informed him that the West Pines' Manager never transferred his order to the Palm Ave Store and declined to honor the discount promised to him by the prior manager.

18. By 7:45 p.m., after not having received his order, Mr. Robinson drove to the Palm Ave store with his young famished daughters to clear up any misunderstandings and pick up their dinner.

19. When Mr. Robinson arrived at the Palm Ave Store, he spoke to Brandon—a white-Hispanic male—who was highly confrontational. As there were quite a few other customers lining up behind him, Mr. Robinson graciously volunteered to give Brandon the opportunity to assist the other customers, since his matter required them to call the Manager at the West Pines Store and would take time.

20. When it was his turn and after attempting to sort out any misunderstandings, he was informed, again, that they would not take 50% off his order and was told "we're not in the business of giving out free stuff."

21. Mr. Robinson became highly offended and another manager, Brian, a white male, intervened. After Mr. Robinson explained to him that Domino's failed to deliver his order he asked Brian to contact the Manager at the West Pines Store to confirm and verify that Domino's did in fact offer him 50% off his current order because of their error, but Brian immediately declined.

22. Outraged and shocked, at the way they were speaking to him and refusing to contact the West Pines store Manager, Mr. Robinson pulled out his phone and began recording the exchange as Brandon continued arguing with the customer.

23. After growing impatient and being tired of being disrespected by Brandon, while his daughters still had not had their dinner and waiting over two and a half hours, Mr. Robinson agreed to pay the full price for the food.

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

5 | P a g e

24. After Mr. Robinson paid for his order, Brandon should have just handed Mr. Robinson his order over the counter. Instead, Brandon went around the counter and opened the glass door which separated the kitchen from the lobby area where customers waited and threw Mr. Robinson's food on the floor as he said, "here's your shit Nigger!"

25. As Mr. Robinson's daughters watched in confusion and horror as Domino's berated their father and tossed their dinner to the ground, they became afraid, stressed, and started crying.

26. Mr. Robinson immediately contacted Domino's via Twitter to inform them of the aggressive discriminatory treatment he experienced from their employee, and followed up numerous times over the next few weeks.

27. On or about May 18, 2018, Domino's district manager met up with Mr. Robinson at the barbershop where he works to apologize and offered him a $100 Domino's Gift Card.

28. Mr. Robinson was outraged, humiliated, and determined to prevent this injustice from happening again.

29. After weeks of Domino's ignoring him, waiting for the regional manager to contact him as promised, and being harassed online by the manager who insulted him, Mr. Robinson retained undersigned counsel to represent him in this matter.

30. All conditions precedent to the filing of this action have occurred or have been waived.

### COUNT I
### Violation of §1981

31. Mr. Robinson repeats, realleges and incorporates paragraphs 1 through 30.

32. As described above, Domino's outrageous conduct constituted discrimination because of Mr. Robinson's race in violation of Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.*

33. Mr. Robinson had an absolute unqualified right to be treated equally by Domino's and a right not to be subjected to a racist slur while picking up his order.

34. Through Domino's discriminatory conduct, Mr. Robinson was deprived of his right to pick up his food on the same terms as enjoyed by white persons, in violation of 42 U.S.C. § 1981.

35. In addition, Domino's is liable for its employees' actions under the doctrine of *respondeat superior.*

36. Mr. Robinson is an African-American man. Domino's treated Mr. Robinson the way it did simply because he is an African-American man. Mr. Robinson's race was the motivating factor why Domino's discriminated against Mr. Robinson. By virtue of Domino's actions and inactions as set forth above, Domino's has violated §1981.

37. Domino's conduct in discriminating against Mr. Robinson due to his race was intentional. Domino's engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of Mr. Robinson.

38. As a direct and proximate result of Domino's actions, Mr. Robinson has suffered personal humiliation, loss of capacity for the enjoyment of life, mental anguish, and embarrassment justifying an award including compensatory damages and punitive damages according to proof against Domino's Pizza.

39. As a result of the deprivations of rights at the hands of Domino's, Mr. Robinson has retained Rodal Law, P.A., and has agreed to pay them a reasonable fee, which he is entitled to recover pursuant to 42 U.S.C. 1988(b) and otherwise by law.

**WHEREFORE**, Plaintiff, Marlon Robinson, demands judgment against Domino's Pizza, Inc., for damages as set forth above, attorney's fees and costs pursuant to 42 U.S.C.

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

1988(b) and for such further relief as this Court deems just and equitable.

## COUNT II
## INJUNCTIVE RELIEF
**Violation of The 13th Amendment's Prohibition Against Using Badges and Incidents of Slavery**

40. Mr. Robinson repeats, realleges and incorporates paragraphs 1 through 30.

41. Mr. Robinson had an absolute unqualified right to be treated equally by Domino's and a right not to be subjected to a racist slur while picking up his order.

42. Domino's' conduct in using a racial slur was undertaken with the purpose of depriving Mr. Robinson of the equal protection and benefits of the law, equal privileges and immunities under the law, and in violation of the 13th Amendment of the United States Constitution.

43. In upholding the right of African Americans to be free from the "badges and incidents" of slavery in their contractual relations, the United States Supreme Court held:

> At the very least, the freedom that Congress is empowered to secure under the Thirteenth Amendment includes the freedom to buy whatever a white man can buy, the right to live wherever a white man can live. If Congress cannot say that being a free man means at least this much, then the Thirteenth Amendment made a promise the Nation cannot keep.

*Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 443 (1968).

44. Furthermore, the 10th Circuit has held:

> Just as master-on-slave violence was intended to enforce the social and racial superiority of the attacker and the relative powerlessness of the victim, Congress could conceive that modern racially motivated violence communicates to the victim that he or she must remain in a subservient position, unworthy of the decency afforded to other races.

*United States v. Hatch*, 722 F.3d 1193, 1206 (10th Cir. 2013).

45. It follows necessarily then that an African American person is free to take advantage of services offered to the general public without fear of being discriminated against, in violation of

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

their rights under the 13th Amendment and or other federal civil rights laws.

46. The 4th Circuit has observed:

> Far more than a "mere offensive utterance," the word "nigger" is pure anathema to African–Americans. Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates."

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001)(cleaned up[1]).

47. Moreover,

> The use of the word "nigger" automatically separates the person addressed from every non-black person; this is discrimination *per se*. As the Supreme Court of Minnesota has stated:
>
>> We cannot regard use of the term "nigger" as anything but discrimination based on race. When a racial epithet is used to refer to a black person, an adverse distinction is implied between that person and other persons not of his race. The use of the term "nigger" has no place in the civil treatment of a citizen.

*Bailey v. Binyon*, 583 F. Supp. 923, 927–28 (N.D. Ill. 1984)(cleaned up) *citing City of Minneapolis v. Richardson,* 239 N.W.2d 197, 203 (Minn. 1976)

48. The act of calling Mr. Robinson a racial slur was an attempt to utterly degrade and dehumanize Mr. Robinson in our society.

---

[1] ""Cleaned up" is a new parenthetical used to eliminate unnecessary explanation of non-substantive prior alterations. *See* Jack Metzler, Cleaning Up Quotations, J. App. Prac. & Process (forthcoming 2018), http://dx.doi.org/10.2139/ssrn.2935374. This parenthetical can be used when extraneous, residual, non-substantive information has been removed, in this case, internal quotation marks, brackets, additional quoting parentheticals and an ellipsis." *See e.g. United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017). *United States v. Steward*, 880 F.3d 983, 987 (8th Cir. 2018); *United States v. Joiner*, 727 Fed. Appx. 821, 827 *fn.* 2 (6th Cir. 2018); *Sang Ho Na v. Gillespie*, 174 A.3d 493, 499 (Md. App. 2017). *Fairlie v. Transamerica Life Ins. Co.*, 2018 WL 3381405, at *1 (N.D. Iowa 2018).

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

49. In discriminating against Mr. Robinson, Domino's engaged in the conduct described in this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Robinson's federally protected rights.

50. The acts or omissions of Mr. Robinson as described herein were the sole and proximate cause behind Mr. Robinson's injuries.

51. The acts or omissions of Domino's as described herein intentionally deprived Mr. Robinson of his constitutional and statutory rights and caused him other damages.

**WHEREFORE**, Plaintiff, Marlon Robinson, respectfully requests that this Honorable Court permanently enjoin Domino's Pizza, Inc. and its employees from the use of racist slurs as well as entering a preliminary and permanent injunction ordering and requiring that Domino's Pizza, Inc. formulate, institute, adopt and maintain policies and practices which will provide equal rights and treatment to Mr. Robinson and all persons of African descent in its stores, and which will to the extent practicable remedy the continuing effects of past discrimination against Mr. Robinson; monetary relief to Mr. Robinson and against Defendants in the form of actual and compensatory damages under 42 U.S.C. § 1981 in an amount to be proved at trial; reasonable costs, expenses, expert fees, and attorneys' fees incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and for such further relief as this Court deems proper.

## COUNT III
### Intentional Infliction of Emotional Distress

52. Mr. Robinson repeats, realleges and incorporates paragraphs 1 through 30.

53. Domino's employees engaged in extreme and outrageous conduct by throwing Mr. Robinson's Pizza on the ground and calling him a Nigger.

54. Domino's actions intentionally, or in the alternative, recklessly caused Mr. Robinson and his two young daughters, who witnessed the disgraceful exchange, severe emotional

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

distress.

55.     Domino's conduct as more fully described herein was outrageous went beyond all bounds of decency and can only be regarded as odious and utterly intolerable in a civilized community.

**WHEREFORE**, Plaintiff, Marlon Robinson, demands judgment against Domino's Pizza Inc. for damages as set forth above and for such further relief as this Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiff, Marlon Robinson, hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ *Yechezkel Rodal*
Yechezkel Rodal, Esq.
Florida Bar No.: 091210
Email: chezky@Rodallaw.com
Sonja L. Cajuste, Esq.
Florida Bar No.: 102938
E-mail: Sonja@Rodallaw.com
Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219
Fort Lauderdale, Florida 33309
Telephone: (954) 367-5308
Facsimile:  (954) 900-1208

*Counsel for Mr. Robinson*

10 | P a g e
**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com